UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH HRUSKA, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 7433 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS, | ) ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Joe Hruska brought this suit against his former employer, the Forest Preserve District of Cook County, Illinois, alleging that he was wrongfully terminated. Count I of the complaint alleges that Hruska was fired due to age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*; Count II alleges that he was fired in retaliation for opposing discrimination and retaliation against two co-workers, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and Count III alleges that he was fired in retaliation for complaining about sexual harassment, also in violation of Title VII. Doc. 1. The District, arguing that the record indisputably shows that Hruska was fired because he failed to disclose a felony drug conviction as part of his employment application, has moved for summary judgment. Doc. 62. The motion is granted.

### Background

The facts are stated as favorably to Hruska as permitted by the record and Local Rule 56.1. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Before proceeding, the court notes that Hruska's Local Rule 56.1(b)(3)(B) response, in admitting several factual assertions

-1-

from the District's Local Rule 56.1(a)(3) statement, asserts that an order entered by the court on May 11, 2011 did not allow him "to conduct depositions or issue discovery relating to" Counts I and III. Doc. 71 at ¶¶ 22-29. Hruska is mistaken.

The District first moved for summary judgment in March 2011. Doc. 13. The court entered and continued the motion and allowed Hruska to conduct discovery under Federal Rule of Civil Procedure 56(d). Doc. 30. The court then held a hearing on May 11, 2011 to delineate the scope of permissible Rule 56(d) discovery. The order entered that day says: "Scope of permissible Rule 56(d) discovery set forth in open court. Plaintiff's oral motion for leave to issue supplemental interrogatories, limited to Rule 56(d) discovery, is granted." Doc. 31. The transcript from the May 11, 2011 hearing is in the record. Doc. 72-4. The only discovery limit imposed by the court concerned employees whom Hruska believed were similarly situated to him: Hruska sought a list of all Cook County employees from 1997–2008 who had failed to disclose a felony conviction in their employment application, while the District sought to limit the list to all District employees from 1997–1998 and 2005–2008 who had failed to disclose a felony conviction in their employment application. (The earlier period was relevant because, as noted below, Hruska successfully applied for employment with the District in 1998 and left in 2004.) The court required that Hruska be provided with a list of all District employees from 1997–2008 who had failed to disclose a felony conviction in their employment application; the court added that Hruska could ask the court to expand the list to all County employees for a narrower period if it turned out that very few District employees during the 1997–2008 period had failed to disclose a prior felony conviction. *Id.* at 23-25.

Contrary to Hruska's submission, the court said absolutely nothing that could be remotely construed as limiting his discovery to Count II or restricting his ability to take discovery on Counts I and III. To the contrary, in response to a comment from the District's counsel about "other issues beyond what would be relevant to the summary judgment [motion]," the court said: "Let's keep discovery at this point focused on what [Hruska] need[s] to respond to the summary judgment motion." *Id.* at 26. The court also granted Hruska's oral motion for leave to issue supplemental discovery requests related to the summary judgment motion. *Id.* at 26-27. And after the May 11, 2011 hearing, the court extended the Rule 56(d) discovery period, granted in part Hruska's motions to compel, and otherwise facilitated Hruska's discovery efforts. Docs. 34, 37-39, 43, 49, 53-54, 56, 60. In August 2012, when discovery closed, the District renewed its summary judgment motion and the court set a briefing schedule. Docs. 61-62. Accordingly, Hruska cannot point to the court's May 11, 2011 order or any other order as a justification for his failure to adduce evidence relevant to Counts I and III.

### A.     The Parties

Hruska was born in May 1953. Doc. 71 at ¶ 1. Cook County and the District are separate municipal corporations. *Id.* at ¶ 8. Pursuant to 70 ILCS 810/17, District employees are subject to the Cook County human resources ordinance. *Id.* at ¶ 10. The rules promulgated by the Cook County Bureau of Human Resources apply to the District. *Ibid.* Cook County performs certain human resources functions for the District, including conducting background checks. *Id.* at ¶ 11.

Hruska worked for the District from 1998 through 2004. Doc. 72 at ¶ 35. When applying in 1998, Hruska filled out a Conditional Employment Affidavit, his fingerprints were taken, and

he authorized the Illinois State Police to release information concerning his criminal record. *Ibid.* Hruska voluntarily left his position in 2004. *Ibid.*; Doc. 72-11 at ¶ 8.

### B. Hruska's 2008 Employment Application

On April 16, 2008, Hruska applied for a maintenance foreman position with the District. Doc. 71 at ¶ 2. The employment application asked: "As an adult have you ever been convicted of an offense other than a minor traffic violation." *Ibid.* Hruska answered "No." *Ibid.* Hruska signed the application under this sentence: "I do solemnly swear (or affirm) that all the answers given and statements made on this application are true and complete to the best of my knowledge and beliefs." *Id.* at ¶ 3.

On May 27, 2008, in connection with his employment application, Hruska completed and signed a Cook County Bureau of Human Resources Conditional Employment Affidavit. *Id.* at ¶ 4. In the Employment Affidavit, Hruska averred: "I further represent in this Affidavit that as an adult **I HAVE NOT BEEN** convicted of any crime, felony, misdemeanor, violation of any statute, ordinance or law or record with the DCFS with sustained findings of child abuse or neglect." *Ibid.* The Employment Affidavit states, "**Full disclosure of any and all convictions is required of all applicants**," and also, "I understand that if at any time during my employment the Background Check indicates that I DO HAVE a criminal record with the State of Illinois or any other state or that I have a record with DCFS, my employment with Cook County Government may be terminated immediately." *Id.* at ¶ 5. At the time he completed the application and affidavit, Hruska did not believe that he had been convicted as an adult of any crime. Doc. 72 at ¶ 4.

-4-

## C. Hruska's 2008 Employment with the District

Hruska began work on May 29, 2008. Doc. 71 at ¶ 6. He was assigned to the District's Central Garage in Maywood, Illinois. *Ibid.* As a maintenance foreman, Hruska's duties included supervising the maintenance mechanics, servicemen, and machine operators at the Central Garage. *Id.* at ¶ 7. Shortly after starting work, Hruska's supervisors—Thomas Thompson, Rick Bono, and James Wagner—told him that they wanted to get rid of Dwaine Hicks and Gronimo Hernandez, two racial minorities, because they had filed discrimination charges against the District. Doc. 72 at ¶¶ 6, 10. Thompson told Hruska to fill out disciplinary action forms ("DAFs") for anything that could possibly fall into the category of disciplinary action against Hicks and Hernandez. *Id.* at ¶ 7. Throughout July and August 2008, Hruska informed Thompson of his discomfort in drafting unfounded DAFs. *Ibid.* Hruska also complained to his union representative, Jack Hurley, expressing his reluctance to write up fellow union members. Doc. 71 at ¶ 23; Doc. 72 at ¶ 7. Throughout August 2008, Hruska repeatedly told Thompson that he opposed what he regarded as retaliation towards Hicks and Hernandez. Doc. 72 at ¶¶ 8, 10-11. Hicks was demoted on September 11, 2008. *Id.* at ¶ 17.

Thompson harassed Hruska about his age. *Id.* at ¶ 9; Doc. 71 at ¶ 22. Hruska was 55 years old when he was hired by the District. Doc. 71 at ¶ 21. On one occasion, Thompson asked "how an old man like [Hruska] was hired by Cook County." *Id.* at ¶ 22. The younger employees working at the Central Garage also made jokes about Hruska's age. *Ibid.*

In early June 2008, a co-worker named John Furlong entered Hruska's office, lifted his shirt, and asked Hruska to touch his stomach. *Id.* at ¶ 26. In mid-July 2008, Furlong entered Hruska's office, said he liked Hruska's stomach, and asked if he could rub it. *Id.* at ¶ 27. After

both incidents, Hruska complained to Thompson about Furlong's actions and asked Thompson to file an official complaint with Cook County. *Id.* at ¶ 28. Thompson never filed a complaint on Hruska's behalf. *Ibid.*

### D. Hruska's Background Check and Termination

Francesca Gaeta, as Assistant to the Chief of the Cook County Human Resources Bureau, was primarily responsible for conducting background checks in 2008. Doc. 72 at ¶¶ 18-19. According to Gaeta, fingerprinting and background checks typically occurred before hiring, and it was uncommon for a fingerprint request to be made three months after an individual began work. *Id.* at ¶¶ 25, 30. Gaeta explained that after an individual completed the Employment Affidavit, the individual would be fingerprinted, the affidavit would be sent to the Inspector General's Office, and images of the fingerprints would be transmitted for a background check. *Id.* at ¶ 27. In 2008, it took approximately two to three weeks to run a candidate's background check after fingerprinting. *Id.* at ¶ 28. In 2008, Gaeta did not initiate background checks unless she was instructed to do so by the Inspector General's Office. *Id.* at ¶ 26.

On July 11, 2008, the Human Resources Bureau sent a memorandum to the Inspector General's Office requesting background checks for the employees listed on the memorandum; Hruska's name was on the list. *Id.* at ¶ 32. Hruska's name did not appear on three similar memoranda sent by the Human Resources Bureau to the Inspector General's Office between May 12, 2008 and July 10, 2008. *Ibid.* Hruska's fingerprints were taken on August 13, 2008. *Id.* at ¶ 33.

On September 3, 2008, Jonathan Rothstein, the Acting Chief of the Human Resources Bureau, reviewed certain documents relating to Hruska's hiring, including the Employment

Affidavit and the Criminal History Record prepared by the Illinois State Police. Doc. 71 at ¶ 12. The Criminal History Record revealed that Hruska had been convicted in August 1972 of a crime involving the manufacture and delivery of a controlled substance. *Id.* at ¶ 13. Section 44-54 of the Code of Ordinances of Cook County states in relevant part: "No persons shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provisions of this article or in any manner commit or attempt to commit any fraud, prevent the impartial execution of this article and any rules issued under this article." *Id.* at ¶ 15. Hruska admits that he was convicted of a felony drug offense when he was nineteen years old. *Id.* at ¶ 16.

On September 3, 2008, Rothstein issued a memorandum to Carmen Sanchez, the District's Human Resources Director, informing her that Hruska and another employee had "failed to disclose a record of convictions(s) which is a violation of the terms of their employment." *Id.* at ¶ 18. The memorandum attached a draft termination letter and directed Sanchez to issue letters to both employees as soon as possible. *Ibid.* In a letter dated September 5, 2008, Sanchez informed Hruska that his employment with the District had been terminated effective that day because he had failed to disclosed his criminal conviction. *Id.* at ¶ 19. Rothstein made the decision to terminate Hruska's employment. *Id.* at ¶ 29. Neither Sanchez nor Thompson had any input into Rothstein's decision. *Ibid.* (Hruska denies the last two sentences, but the materials cited in his Local Rule 56.1(b)(3)(B) response do not support his denial, and the materials cited by the District's Local Rule 56.1(a)(3) statement do support its factual assertions. Doc. 64 at ¶ 29.)

At the time he made the decision to terminate Hruska's employment, Rothstein did not know Hruska, had never met him, was unaware that he had previously been employed by the District, was unaware of any complaint that Hruska made to anyone regarding his employment, and was unaware of any age-related comments made to Hruska by District employees. Doc. 71 at ¶¶ 30-31. Rothstein also did not know Thompson (Hruska's supervisor), had never met Thompson, had never spoken to Thompson, had never reviewed any documents Thompson may have prepared concerning Hruska, and had never discussed with Thompson anything related to Hruska's employment. *Id.* at ¶ 32. The sole basis for Rothstein's decision to terminate Hruska's employment was Hruska's failure to disclose his criminal conviction on his Employment Affidavit. *Id.* at ¶ 33. (Hruska's Local Rule 56.1(b)(3)(B) response denies the last sentence on the ground that he understood the term "adult" in the Employment Affidavit to mean 21 years or older, *ibid.*, but the denial does not undermine the District's assertion that Rothstein made his decision on the stated ground, an assertion supported by evidence cited in the District's Local Rule 56.1(a)(3) statement. Doc. 64 at ¶ 33 (citing Rothstein's affidavit).)

## Discussion

Count I alleges that the District violated the ADEA by firing Hruska due to his age, Count II alleges that the District violated Title VII by firing Hruska for opposing discrimination and retaliation against two co-workers, and Count III alleges that the District violated Title VII by firing Hruska for complaining about sexual harassment. The District seeks summary judgment on all three counts. Hruska's response brief cites the supposed discovery limitations imposed by the court's May 11, 2011 order as a justification for not "respond[ing] in detail [regarding] Counts I (age discrimination) and III (retaliation for sexual harassment complaints)." Doc. 70 at

2. As shown above, Hruska's premise is incorrect. The court did not limit discovery on Counts I and III; to the contrary, the same discovery was allowed as to all three counts, with no distinction drawn among them. Although Hruska's brief does not address Counts I and III, the court has an independent obligation to determine whether summary judgment is warranted on those claims. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[A] nonmovant's failure to respond to a summary judgment motion ... does not, of course, automatically result in judgment for the movant. The ultimate burden of persuasion remains with [the movant] to show that it is entitled to judgment as a matter of law.") (internal citations omitted).

## I.  Age Discrimination (Count I)

ADEA claims are analyzed under the same framework as Title VII claims. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106 n.3 (7th Cir. 2009) ("We apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII."). An ADEA plaintiff may seek to defeat summary judgment under the direct or indirect methods of proof. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003) ("A plaintiff may prove employment discrimination under the ADEA, Title VII, and § 1981, using either the 'direct method' or 'indirect method.'"). "Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). The appropriate focus under the direct method "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Everett v. Cook Cnty.*, 655

F.3d 723, 729 (7th Cir. 2011); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011).

"Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. In short, direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citations and internal quotation marks omitted); *see also Coleman*, 667 F.3d at 860; *Everett*, 655 F.3d at 729; *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). Hruska presents no direct evidence of that nature, which is not surprising given that, in this day and age, employers and managers rarely admit to having engaged in discrimination.

"A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citations and internal quotation marks omitted); *see also Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012); *Everett*, 655 F.3d at 729 (explaining that circumstantial evidence is "evidence that points to discriminatory animus through a longer chain of inferences"). Circumstantial evidence typically falls into one of three categories: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse

-10-

employment action." *Diaz*, 653 F.3d at 587; *see also Coleman*, 667 F.3d at 860; *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011).

There is no circumstantial evidence that would enable a jury to infer that Hruska was terminated because of his age. Hruska offers no evidence of ambiguous statements or behavior towards other employees over the age of forty, which is the protected group under the ADEA. *See* 29 U.S.C. § 631(a). Nor does Hruska adduce any evidence that similarly situated employees under the age of 40 systematically received better treatment. With respect to pretext, it is undisputed that at the time he made the decision to terminate Hruska, Rothstein did not know Hruska, had never met him, and was unaware of any age-related comments allegedly made to Hruska by other District employees. Doc. 71 at ¶¶ 30-31. The record indisputably shows that Rothstein decided to terminate Hruska solely because he had failed to disclose his criminal conviction, which violated the terms of his employment. *Id.* at ¶ 33.

Hruska argues that he honestly believed he had never been convicted of a crime as an adult—meaning that he did not intentionally give false information on his Employment Affidavit—and that Cook County usually allows employees to explain why they failed to disclose a conviction. Doc. 70 at 11. But whether the District should have excused Hruska's failure to disclose his prior felony conviction, or whether its decision to terminate Hruska was unwise or precipitous, is not pertinent to his ADEA claim. An employee fired for unwise or precipitous but not discriminatory reasons has no discrimination claim. *See Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) ("[t]he Civil Rights Act of 1964 does not require employers to have 'just cause' for sacking a worker"); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 324 (7th Cir. 2003) ("The reasons for [the plaintiff's]

termination are not scrutinized as to whether they were right or wrong, but only whether the reason for which the [employer] discharged the [employee] was discriminatory.") (internal quotation marks omitted); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (in affirming the dismissal of an employment discrimination claim, reasoning that "[w]hile the [challenged employment] decision arguably was wrong, [the plaintiff] has not shown it was based on illegal discrimination").

The "cat's paw" theory set forth in *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011), does not warrant a different result. The theory allows for employer liability where "an employee is fired ... by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012). Hruska adduces no evidence that Thompson or any other subordinate manipulated Rothstein into firing Hruska based on the subordinate's discriminatory animus. When Rothstein terminated Hruska, he had never spoken to Thompson or reviewed any documents Thompson may have prepared concerning Hruska. Doc. 71 at ¶ 32. Because Rothstein fired Hruska solely because he failed to report his prior felony conviction, with no input from anyone else, *id.* at ¶¶ 29, 33, the cat's paw theory does not apply. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012) (holding that the theory does not apply where "there is no evidence in the record to suggest that [the decisionmaker's] decision to fire [the plaintiff] was in any way influenced by [the plaintiff's supervisor]").

Hruska's ADEA claim fares no better under the indirect method. The indirect method has three steps. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). First, the

plaintiff must establish a prima facie case of discrimination, which requires evidence that: "(1) [he] is a member of a protected class, (2) h[is] job performance met [the employer's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Coleman*, 667 F.3d at 845 (internal quotation marks omitted) (third alteration in original). Second, if the plaintiff "establishes a prima facie case, then the burden shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for h[is] termination which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008) (internal quotation marks omitted). Third, "[i]f the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006).

"Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Silverman*, 637 F.3d at 743-44 (alteration in original) (internal quotation marks omitted); *see also Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007). "The prima facie case and pretext inquiries often overlap; [a court] may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision" and the plaintiff's failure to rebut that explanation provides a sufficient ground for granting summary judgment to the defendant. *Adelman-Reyes*, 500 F.3d at 665-66; *see also Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007) (noting that "the second prong [of the prima facie case] is inextricably intertwined with the pretext analysis");

*Vanasco v. National-Louis Univ.*, 137 F.3d 962, 966 (7th Cir. 1998) (addressing pretext without first determining whether the plaintiff had made a prima facie case).

The District has set forth a nondiscriminatory reason for terminating Hruska: that after reviewing Hruska's background check, Rothstein concluded that Hruska had violated District policy by failing to disclose a prior felony conviction during the employment application process. Therefore, to survive summary judgment on his ADEA claim, Hruska must adduce evidence sufficient to show that the stated reason for his termination was pretextual, meaning that it was a lie obscuring the true, discriminatory basis for his termination. Hruska's only evidence in support of pretext is timing: the fingerprinting and background check that resulted in his termination occurred not when Hruska applied for employment, but only after Thompson had made negative comments about his age. Doc. 70 at 12-13. Because "suspicious timing alone is rarely sufficient to create a triable issue," *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 905 (7th Cir. 2005), Hruska can prevail only by advancing the theory that Thompson delayed Hruska's fingerprinting and background check so that when the background check revealed his undisclosed criminal conviction, which Thompson somehow knew about, Doc. 70 at 10, Rothstein would be duped into terminating Hruska under the cover of the District policy regarding undisclosed convictions.

That highly implausible theory is not the kind of reasonable inference that must be drawn in Hruska's favor on summary judgment. *See SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 369 (7th Cir. 2009) ("The non-moving party is entitled to have only *reasonable* inferences drawn in its favor."); *Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998) ("We are, however, not required to draw every conceivable inference from

the record in favor of the non-movant–only those inferences that are reasonable.") (internal quotation marks and alterations omitted). Speculation of that nature provides no basis for undermining the District's stated reason for the termination. *See Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012) ("it is well-settled that conjecture alone cannot defeat a summary judgment motion") (internal quotation marks omitted); *Hanners*, 674 F.3d at 692 ("Hanners's assertion that he would not have been suspended for thirty days had he been an African American amounts to mere speculation, which this court consistently has held is insufficient to avoid summary judgment"); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 669 (7th Cir. 2006) (affirming summary judgment in an employment discrimination suit where plaintiff "failed to present any evidence that [defendant's] proffered reasons were pretextual").

## II. Retaliation for Opposing Discrimination Against Co-Workers (Count II)

Hruska may forestall summary judgment on his first Title VII retaliation claim—that the District terminated him in retaliation for opposing discrimination and retaliation against two co-workers—under the direct or indirect methods of proof. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). Hruska pursues both methods. Doc. 70 at 13-14. Under the direct method, a plaintiff "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2012) (internal quotation marks omitted). The District challenges the first and third elements of Hruska's direct case. There is no need to consider the first element because the record indisputably shows that Hruska cannot satisfy the third element, causation.

Settled precedent holds that a plaintiff can satisfy the causation element only by adducing evidence sufficient to show that the employer would not have terminated him had he not engaged in protected activity but everything else had been the same. *See Smith v. Wilson*, 705 F.3d 674, 680 (7th Cir. 2013) (holding that for retaliation claims, "an employer's demonstration that the same result would have occurred without the 'motivating factor' still constitutes a complete defense"); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 963 (7th Cir. 2010) (same). As with his ADEA claim, the only evidence linking Hruska's complaints and his termination is timing—Hruska complained about the treatment of Hicks and Hernandez in July and August 2008, and he was terminated on September 5, 2008—and pretext. According to Hruska, District employees deliberately manipulated the timing of his fingerprinting and background check to induce the unwitting Rothstein to retaliate against him for opposing the unlawful treatment of Hicks and Hernandez and to prevent Hruska from attending the meeting resulting in Hicks' demotion, which occurred shortly after Hruska's termination. Doc. 70 at 12-13; Doc. 72 at ¶ 17. These implausible inferences and unsupported speculation are insufficient to defeat summary judgment. *See Pugh v. City of Attica*, 259 F.3d 619, 629 (7th Cir. 2001); *Lewis*, 677 F.3d at 331; *Chmiel*, 158 F.3d at 968. Moreover, Hruska does not adduce any evidence suggesting that the District employees with retaliatory animus against Hruska had any influence on the ultimate decisionmaker, Rothstein, as required to support cat's paw liability. *See Staub*, 131 S. Ct. at 1192; *Cook*, 673 F.3d at 628.

Hruska's case under the indirect method fails as well. The indirect method for Title VII retaliation claims has the same three steps as the indirect method for ADEA claims. *See McDonnell Douglas*, 411 U.S. at 802-05; *Coleman*, 667 F.3d at 845; *Kodl v. Bd. of Educ. Sch.*

*Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007). As with his ADEA claim, Hruska cannot prevail on the indirect method for his Title VII retaliation claim because he cannot show that the District's stated reason for firing him—Rothstein's discovery that Hruska had failed to disclose his prior felony conviction during the application process—was pretextual.

### III. Retaliation for Complaining About Sexual Harassment (Count III)

Hruska cannot defeat summary judgment for his second Title VII retaliation claim—that he was fired for complaining about sexual harassment—for the same reasons that his first Title VII retaliation claim fails. Rothstein had no knowledge of Hruska's complaints about sexual harassment, and it is undisputed that Rothstein based his termination decision solely on Hruska's failure to disclose his felony conviction. Doc. 71 at ¶¶ 31-33. Hruska's evidence in support of causation and pretext for Count III depends wholly on the timing of his background check and termination coupled with a series of speculative inferences. That evidence is insufficient for the reasons given above.

### Conclusion

For the foregoing reasons, the District's summary judgment motion is granted.

March 21, 2013

_____
United States District Judge